All right, Ms. Judge, welcome back. Thank you. Good morning. My name is Mary Judge with the Federal Defender Program and I represent Derrick Davis, the appellant in this case. This case is an appeal of a 21 months above the high end of the guideline range that was imposed on remand and raises both procedural error and substantive error or substantive reasonableness. This argument will primarily focus on the procedural error. Mr. Davis is once again seeking remand for resentencing. Briefly, in background, this court, this panel previously reversed and remanded finding significant procedural error because the judge made inconsistent findings when he, on one hand, adopted the presentence reports recommendation not to apply a section 2K2.1B6B for level enhancement because the jail call at issue and that evidence was insufficient to prove Mr. Davis was involved in a shootout just before his arrest. And then on the other hand, the judge accepted the government's position and argument at the sentencing that the recorded jail call established that Mr. Davis was indeed an active participant. And the judge explained his above guideline sentence at that first hearing in large part based on, by reference to that finding. The judge made the same error and imposed the same sentence on remand. Again, the sentencing decision rests on conflicting findings that cannot be reconciled. At the resentencing, despite expressing, expressly stating to the contrary twice during the hearing, the judge had a sustained belief that Mr. Davis was involved in a shootout immediately before his arrest, resulting in the same inconsistency and significant procedural error. This is a very fact-based argument, so it may be helpful to consider and compare the judge's statements at both sentencings. The only real issue in the case is whether the judge continued to believe and rely on the fact that Mr. Davis participated in a shootout despite... Your invitation to consider the first sentencing transcript instead of the second one, which is the one before this court on review, suggests that Judge Guzman didn't really mean what he said in the second time around, when he explicitly said numerous times that, I agree that there's insufficient evidence to establish that the defendant actually fired his weapon, went out of his way to say that's not the basis of my decision, my decision is based on something entirely different. He seems to be picking up on something that we said in our opinion reversing, that perhaps what the judge really meant to say is that Davis went to the scene intentionally looking for trouble, but did not actually fire his gun, and that type of finding could perhaps be reconciled with the PSR's recommendation of insufficient evidence for the enhancement. So he was trying to fit his decision within the framework that we supplied in the prior quarter. He explicitly made the statements regarding his belief that there wasn't a shootout, but my position is that when taken as a whole, that that is inconsistent, that he didn't mean that essentially. That would be a pretty hard thing for us to say that the judge didn't mean what he said the second time around. I believe that what the judge did was he couldn't get the fact that he was involved in a shootout that was such a big presence in his ruling in the first case out of his mind for the second sentencing. And if I can, I'll show some very consistent statements that he makes at both hearings, and I think it helps show that the judge essentially followed a script from the first sentencing and believed, despite the two times, as the government pointed out in their filing, the he expressly stated he did not. Ms. Judge, it's clear the judge is very concerned about the statements he makes about the shooting, but the judge said multiple times there's insufficient evidence to establish that he actually did fire the weapons, but he was concerned that this person with a criminal history who had other opportunities at rehabilitation, hadn't rehabilitated, he had a loaded gun, he was concerned he's a danger, and makes pretty clear that just the fact that he's bragging about something, whether he did it or not, shows a complete disrespect for the law. So, how do we get around those statements clearly made by the judge here? And if you could focus on what he said at the second hearing, I think that is most helpful. I will do that, Judge. It seems like you're asking us to say the district court didn't mean what he said. And that's a pretty big hurdle. I understand. Without proof. If I may, just a couple of sentences from the first sentencing where the judge is talking about boasting, and I would like to then read the sentencing, a couple of sentences from the sentencing the second time, and I think it's important because they are so similar. In both hearings, he relies on a couple of principles regarding the boasting, the state of mind, and the gunfire that took place. And in the first sentencing at Appendix 33, line 14 to 18, the judge discusses boasting as, and this is a quote, his explanation, his boasting of what he did in this case to his friend in that phone conversation reflects either a total failure to understand the seriousness of what he did, or even worse, a complete lack of respect for the law. In this case, what he did is participate in a shootout. In the resentencing at Appendix 74, lines 4 to 10, the judge states, let's be clear, this phone conversation that he had can best be described as a boastful explanation of bragging to one of his friends about what he did. It is clear that he is insinuating, if not actually saying, that he was involved in a shootout, including the sound effect for the bullets being fired during this encounter. And is your argument that because the judge used the same words of boasting that there's something wrong with that? I'm not sure I'm following. My argument is that in the beginning, the first sentence, the judge was very concerned about my client participating in a shootout. He spent a significant amount of time discussing the shootout. Well, what you just read was the court's concern about his statements about it and boasting about it, which is exactly what he said the second time. Right. But my point is that he said the same thing in both hearings, and in the first hearing, clearly, he was saying these things in support of the determination that Mr. Davis participated in a shootout. No, he's saying that Mr. Davis is incorrigible, basically, that he's a bad actor who boasts about bringing a gun to a scene of a fight and is proud of it. And that's a valid sentencing factor. So he's explaining what he meant earlier, apparently. From one sentencing to the other, we have essentially the exact same facts. Understood. No change. And the judge arrives at the exact same sentence, despite arguably the most heinous activity that he relied on at the first sentencing, driving around in Chicago and shooting at And so, what I'm trying to show is that he approached the second sentencing in the same way he approached the first, and that's why this error was made. The 3553A factors were considered in both sentencings? Your argument is based on an assumption that he relied on this in the first hearing. And we didn't find that. We said there were inconsistencies that the court needed to clarify it. So it seems like when it was remanded, the court clarified it. That he participated in a shootout? No, no, no. That his concern was this individual who has a criminal history and has had other opportunities to rehabilitate and hasn't, instead of trying to get on the right track, is out there from arrested, boasting about what he did, whether or not he engaged in the shooting or went to the shootout. Excuse me. I think it's important to consider that the judge was addressing all the same factors, 3553A factors, client's background, all of that came about at the first sentencing hearing. And then you remove the most egregious conduct from that, and you still arrive at the same sentencing. And I believe that when you have that 84-month sentence being imposed at the second sentencing and you have the judge pretty much repeating and saying that he is talking about what he did and he doesn't understand the seriousness of what he did, that he's insinuating he participated in a shootout, I think it shows that he still had that in his mind when he imposed the sentence. Thank you. Mr. Segal. Good morning. May it please the Court, my name is Kirk Segal and I represent the United States. This court should affirm the district court's sentence in this case, which is both procedurally and substantively sound. First, the district court's factual findings regarding defendant's use of the firearm or lack thereof at sentencing are consistent. As the court has already pointed out, the district court repeatedly determined that there was insufficient evidence to support the finding that the defendant possessed his firearm in connection with another felony offense. The court actually finds that three times. It both explicitly states it on A-74 and the bottom of A-75 and top of A-76, but it also on A-52 declines to find or it agrees with the probation officer and adopts the PSR's guidelines to that effect. Why did your colleague, Mr. Rojas, ask for a higher sentence the second time around? Well, Your Honor, the district court had previously given his 84-month sentence. The government's never taken the position that that was substantively unreasonable and there was no new mitigating evidence on remand. And to the court's point earlier, the district court was simply clarifying its factual findings. There was no... No, I'm focusing on the conduct of your office. Oh, yes, Your Honor. Essentially, the government believed that the 84-month sentence was substantively reasonable and requested to make... Okay. Maybe I can put a finer point on it. The first time around, Mr. Rojas asked for a 63-month sentence on the argument that Davis participated in the shootout at the scene of the accident where he was found having discarded a gun, which is the charged offense here. The second time around, Mr. Rojas asked for an 84-month sentence on the opposite argument that he did not participate in the shootout. So, I'm just trying to reconcile those two conflicting positions in some rational way. So at the sentencing, the district court did ask the trial AUSA about the request and he stated that the primary factor was the defendant's intentionally going to the scene. So I think it was a reflection of the defendant's intent and how negative that was being. Facts had not changed. I don't think the facts had changed, Your Honor. I think our argument had been honed on remand, whereas previously I think that we had used potentially some ambiguous language, used a firearm, we had maybe focused on that point, and then on remand, reassessing the facts, I think that was really what stood out to Mr. Rojas. It's more serious if he actually used the firearm. So your office was arguing that the defendant committed more serious conduct as justification for a 63-month sentence and then came back on remand and argued for a higher sentence on a different spin of the facts, let's put it that way, a different understanding of what the facts show or what the evidence shows that is less serious, that makes the crime less serious. Yes, Your Honor. And so, again, I'm trying to find a rational thread in that series of events. And was it approved by your office or was this just a freelance by Mr. Rojas? No, Your Honor. We're getting a little outside the record. Mr. Rojas does indicate that it was approved by the office. I can represent it was approved by the office. That is outside the record, however. I think the primary focus was our office's belief that the 84-month sentence was not substantively unreasonable on remand and then the reassessment at that time. I would have thought that the office's position would then be we stand by our recommendation of 63 months on the facts of this case. But, Your Honor, we see no substantive unreasonableness in your original sentence. That would have been the responsible thing to do. Understood, Your Honor. You've stirred the pot yet again, you did so in the first time around by giving conflicting cues to the trial judge about what your argument was based on the enhancement and the sentence that was advocated and the position that you were taking about whether the defendant fired the gun. It's troubling, is my point. It may not be reversible error because it's not on the judge, it's on your office, but it's troubling. Understood, Your Honor. Okay. I would state, however, there is one fact that was changed between the sentencing. Not to the underlying conduct necessarily, but one fact that was new on the remand, which was the revelation that the contested phone call had occurred one week after the fact, one week post-arrest, and so that had not been previously presented to the district court. I think that's probably . . . That wasn't disputed at the first sentencing, though, was it? No, Your Honor. Well, the defendant made an argument related to the contested phone call that we didn't know when it took place, we didn't really know any details about it. But it wasn't disputed. He didn't say, oh, this definitely took place beforehand. No. Oh, sorry. Let me clarify, Your Honor. The sequence of events was not in dispute. There was a question as to the timing of the phone call, and I think the one-week post-arrest nature of the phone call was something that stood out to the district court. It is sufficient time to kind of reflect upon the offense conduct, and that is something I think the district court took into account when it considered the defendant's attitude on that phone call. Particularly when it comes to the phone call, I think, Judge Saini, you picked up on this. I think the district court was concerned not with the veracity of defendant's statements on that call. He was more concerned with the attitude that those statements reflected. And as the court's pointed out, that's a permissible thing to consider. Ultimately, the district court's factual findings were consistent. The defendant's statements on the phone call indicated that he was unrepentant after the fact, even if he may not have engaged in an actual shootout. He may not have discharged his weapon. Regarding the substantive reasonableness, based on his reply brief, it appears the defendant may be claiming that substantive error rises and falls with his procedural error claim. That's a little bit of a shift in the briefs. As I've already stated, I don't think there was a clearly erroneous finding of fact because I don't think there was any finding of fact that the defendant had actually discharged his firearm. If there are no further questions, the government respectfully requests that this court affirm the district court's judgment. Thank you. Judge, I don't know if you had run out of time, but you can have some extra time in rebuttal if you have anything further to say. Thank you, Judge. I just want to emphasize the problematic way the government presented this case to the judge and how it impacted the result of the sentencing and how that I think affects whether or not this court should impose a remand for resentencing. At the initial sentencing, the government argued because Mr. Davis participated in the shootout, a sentence at the high end of the guideline range was warranted. Then at the second sentencing, the government asked for a sentence of 84 months despite the fact that it conceded that there was not evidence that Mr. Davis did participate in the shootout. To the extent sentences are designed to be fundamentally fair and people are entitled to due process, it's problematic when a defendant goes back on a case and the conduct is significantly less egregious and the government asks for a higher sentence. Again, providing the judge with conflicting cues as to what the appropriate sentence is. Thank you. Thank you. Our thanks to all counsel. The case is taken under advisement.